THE FIRST CASE THIS MORNING IS IN RE MIRACLE TUESDAY. MR. SUPNICK? YES, YOUR HONOR. GOOD MORNING, YOUR HONORS. I AM PAUL SUPNICK FOR THE APPELLANT MIRACLE TUESDAY. I WOULD LIKE TO RESERVE THREE MINUTES FOR REBUTTAL. MAY IT PLEASE THE COURT, THE KEY FEATURE OF THE MARK AT ISSUE, JPK PARAGED 75 IN DESIGN, IS THE ASSOCIATION OF AN INDIVIDUAL, A PERSON, WITH A GEOGRAPHICAL LOCATION. AND THAT FACT MAKES IT DIFFERENT THAN ANY CASE THAT I HAVE NOTED IN ANY OF THE BRIEFS. DO WE ASSOCIATE MARKS WITH PEOPLE OR DO WE ASSOCIATE THEM WITH THE SOURCE OF PRODUCTS? WELL, NO, WE ASSOCIATE THEM WITH THE SOURCE OF PRODUCTS, BUT WE HAVE, IN THIS PARTICULAR SITUATION, A PERSON THAT IS THE MONOGRAM JPK THAT BRINGS IN THE CONCEPT OF A PERSON INTO WHAT THE PUBLIC IS LIKELY TO PERCEIVE OF THE MARK. YES, BUT WE HAVE A GREAT DEAL OF JURISPRUDENCE THAT SAYS YOU'RE NOT EVEN ENTITLED TO USE YOUR OWN NAME IF, IN FACT, IT DOESN'T ACCURATELY REFLECT THE MARKET REALITY OF THE SOURCE OF YOUR PRODUCT. I CAN'T MARKET A RANDY RADER TENNIS RACKET IF, IN FACT, THERE'S SOMEONE WITH A PRIOR RIGHT TO THAT OR THERE ARE OTHER REASONS THAT I CANNOT ASSOCIATE MY NAME WITH THAT PRODUCT. WHY WOULD YOU TELL US THAT WE SHOULD LOOK TO YOUR BENEFACTOR'S NAME RATHER THAN THE SOURCE OF THE PRODUCT? IT'S NOT UNUSUAL FOR NAMES TO BE REGISTERED AS TRADEMARKS. IN FACT, THE TRADEMARK OFFICE HAS PROCEDURES FOR WHEN SOMEBODY USES THEIR OWN NAME TO ALLOW THE USE OF A NAME TO BE REGISTERED. SURE, IF, IN FACT, IT MEETS OTHER CRITERIA, BUT THOSE CRITERIA ARE ASSOCIATED WITH THE SOURCE OF THE PRODUCT. YOU DON'T HAVE ANY ENTITLEMENT BY VIRTUE OF YOUR NAME BEING A PARTICULAR ASPECT, RIGHT? YOU HAVE NO RIGHT TO USE YOUR NAME. I THINK IT DEPENDS UPON WHAT SORT OF RIGHT HAPPENS TO BE GIVEN. HERE WE HAVE A PRINCIPLE OF A COMPANY THAT'S A DESIGNER OF THE GOODS. BUT THE POINT IS, WE'RE LOOKING AT THE GOODS AND WHETHER THE MARK REPRESENTS THE SOURCE OF THOSE GOODS. WHERE ARE THESE GOODS MADE? THESE GOODS ARE MADE OUTSIDE OF THE UNITED STATES, IN ASIA. AND THAT DOESN'T SOUND TO ME LIKE PARIS. NO, IT IS NOT PARIS AT ALL. THEN, IF THE CONSUMER LOOKS AT THE MARK AND SAYS, HE'S PARIS 75, WHERE ARE THEY GOING TO THINK IT'S COMING FROM? THEY'RE GOING TO ASSOCIATE THE SOURCE WITH THE MONOGRAM. THEY'RE GOING TO ASSOCIATE THE MONOGRAM, JPK, WITH THAT LOCATION. But you can't ignore the word Paris. My understanding is you're not arguing that the monogram dominates the mark or anything of that sort. Well, what we're saying, it's certainly part of the mark. And it's the association of Paris with that monogram. The question is not the association of Paris with the monogram or Paris with the designer, so much as it is the association of the mark with the goods. It's a goods place association, not the designer of the goods place association that we're concerned about. I think what really needs to be looked at is what is the perception of the public so that there is no deception. But you have to start with the statute. And the statute says that if the mark is geographically misdescriptive as to the goods, so you have to start with the goods, not the person, not the designer. I mean, you've got all these arguments about the designer and about who made it and where the designer's from, but that's not what the statute directs you to. So how do you get around the fact that Paris is associated in this mark with the goods? Well, it clearly is associated with the goods. There's no dispute about that. Paris and Paris is associated with fashion goods. That's clear. There's no argument about whether Paris and fashion goods are associated. The issue here, as Miracle Tuesday sees it, is that the relationship between that monogram and the location Paris is so tied in so that the perception of the public when they see the brand, they're likely to associate JPK with Paris. And whether they are concerned about the concern of the consumer is more likely to be with the designer in this particular situation than the goods. If you're right about all that, that all the consumer cares about is who made their product, and I certainly give it to you that a lot of people care who made it, then why do you have to associate JPK with Paris? Why isn't JPK enough? Because that's part of who JPK, the perception of JPK is, and who is the designer of the goods. Obviously there's a certain cachet if you put Paris in there, but it's still a true statement that the goods are associated with JPK and Paris. Well, there may be a cachet, and you may certainly be able to register the initials, but that doesn't mean that it's proper to register it when you use the word Paris and that word makes the mark primarily deceptively misdescripted. If the cachet is there with the monogram, then the monogram might be registrable, but you put the word Paris there when the goods do not originate from Paris, that creates a problem. The test is whether the mark really is deceptive. And the question is, is the public really deceived by that statement? And Miracle Tuesday suggests that the public is not likely to be deceived. Is that a question of fact? What we see is that if you look through a lens that... To some extent it's a fact, yes. But the question is, is it possible to determine that there is... Do we go beyond the factual determination so we get to an issue of law? When you look at the overall ... If you try to make a determination as to what is deceptively misdescripted through the wrong lens, you end up with the wrong result. What's the wrong lens here? The wrong lens is simply looking at goods place association. That's really not an issue. Obviously there's an association with fashion goods in Paris. The statute says that good place association is what we're supposed to be looking at. Isn't your argument one that the statute should be different given the realities of how people's, customers' perceptions of goods have changed over time? That's not one we can do anything about. No, Your Honor. We're not trying to say that the statute is incorrect at all. The question is, how do you try to evaluate what the meaning of that statute is? And if you try to evaluate the meaning of the statute by looking at what the public perceptions are and trying to determine what is really going to deceive the consumer when they see that brand, that's really the issue. So we're not supposed to determine whether it's misdescriptive as to where the goods come from? We're supposed to determine if it's misdescriptive in some other way? The question again becomes, what do you mean, what is meant by where the goods come from? Because in a real sense we're talking about goods that were created by somebody that has a Paris connection. But the fact that he lived in Paris until 1986, that is the only Paris connection, correct? That he lived there, yes, Your Honor, and that he lived there until he was 31 and it was a substantial portion of his formative years. But there's no other connection with Paris as it relates to these goods, is there? They're not manufactured there? They're not manufactured there, no, Your Honor. They're designed there? They're not designed there, they're designed in the United States. One of the things that you point to is that there was some showing or some trade show, but you don't actually say that it was for these products. That was not specifically in the declaration, that is correct, Your Honor. So am I to assume it wasn't for these products? You would have said it was. Probably it was, but it wasn't in the declaration. And what is 75 in the mark? What does that mean? 75 really wasn't discussed before the trademark office, but it is a part of the, essentially like a zip code in Europe which designates France. But I suspect only a small portion of the public know what that is. Want to save the rest of your time, Mr. Sipnyk? Yes, Your Honor. Thank you. Ms. Heber. May it please the Court. What's the product? Handbags and other fashion accessories. Isn't it the design? Aren't these designer goods? They are designer goods. Isn't what they're really selling and marketing the design? No. The distinctive design of JPT. JPK, isn't that what they're doing? No, they're selling... If we determine that what's really what makes the... Give me a fancy designer name. Christian Lovato? Yes. I wanted to make it hard for him to pronounce it. I can't say that. If we decide that what really distinguishes those goods is the design and what's really at stake here is a design, isn't this design associated with Paris? No, Your Honor, because the record reflects that Mr. Clefa, when he lived in Paris, was not a handbag designer. If you go look at his declaration, which is at A200 to A202, it says that when he lived in Paris, he was in another field. That's in paragraph three. He wasn't a handbag designer. He became a handbag designer five years ago. I'm asking you, though, really, if the TTAB got the right product. They're looking at sunglasses and handbags, but what they really should be looking at is the design of those sunglasses and handbags, right? Unfortunately, the statute doesn't say that, and we're bound by the statute. It says the product, but the product in this case, the thing that is bought, the thing that distinguishes it is design. It is, that's what makes, what was that guy's name again? That's what makes a big, or her, I'm not even sure which. We can't focus on the fact that we're dealing with fashion articles here. It's no different from, say, chairs. Well, Herman Miller designed chairs, and there's other designers from the 1950s who were very famous about chairs. It's still chairs. We're just dealing with handbags, and the office, when we're looking at registrability, and what they apply for. Let me put this a slightly different way. I was talking this case over with a bright bunch of University of Utah students, and one of them said to me, if they move a designer to Paris, do they get the mark? No. If they move a manufacturing, one part of their manufacturing to Paris, do they get the mark? Maybe. But I'm still, I have two problems. One is, all of a sudden, this becomes subject to market manipulation, and the other point is, I'm not sure the TTAB has got the product right. Your Honor, they have the product right. There's no question about that. The goods are what the goods are described in the application. There's no representation here that these are some special fashion handbags. But what the consumer recognizes about those goods is not just that they can wear them to see, but that they have glitzy features that make the wearer look chic. Right, and so that's why they want to market. They're buying a design. They're not buying just glasses. And the product, therefore, becomes the design. Well, under applicant's theory, it would be the designer, right? So all they need is JPK or JPK 75. Why do they need Paris? The consumer is going to look to Paris for the style, quality, the haute couture that Paris is known for. Because it's a Parisian design, and just like you want your surfboard to come from California, you want your sunglasses to come from Paris. And you may want your luggage and articles that were at issue in the WADA case, New York Ways Gallery, to come from New York. It's still deceptive. New York is another fashion article. Were any of the goods in question here designed or manufactured in Paris? No. No, there is absolutely no connection between the goods and Paris. And that's the only inquiry we care about. They'd like to change the inquiry. They were designed by a designer who was living in Miami. Correct. And so when you have the evidence that we have here in the record, that Paris, and there's no dispute, it's a fashion mecca. It's one of the four fashion capitals of the world. There's ample evidence. What are the other three? I think it's New York, London, and Milan. Did you know that? Yes. Actually. You're talking to the wrong person. And it's not Miami. Right, and I'm from New York. That doesn't entitle me to come out with a mark that has New York in it for fashion articles. The case law uses the phrase, where do the goods originate from? So how do you define the word originate? Well, originate is always going to be, again, tied to the goods. And the case law indicates that it's either made there, it's manufactured there, or there's a principal component. Let's say here the leather used to make the handbags would come from there. Nantucket nectars. They're not made in Nantucket. So how do they originate from Nantucket? If they're not made there, there's no principal component of the product that comes from there. That was actually a board case, and I'm unfortunately misremembering the outcome of that, but I think it was deemed to be misdescriptive. So perhaps not deceptive. I'm not remembering what happened in that one. So they said because the originator was from Nantucket and lived in Nantucket and because they had their offices in Nantucket that that was good enough. So where do you draw the line? If the applicant still lived in Paris, would that be enough? If he was living in Paris and designing the goods there, it might be, because the place of design can be enough. What if he had a home in Paris and a home in Miami and he did his primary work in Miami, but he traveled to Paris on regular basis? I think you're getting too far removed. I mean, if I went to school in a place, if I traveled to a place, I have some connection. I have the same kind of connection that Mr. Clefa does. I was there for a period of time. There's no indication here that when he was there, he had anything to do with fashion design. This isn't a case where you have, for example, say, Louis Vuitton or the House of Chanel so tied, the brand is so known and so tied with Paris, and they go someplace else and try and say, oh, well, you know, it still has this Parisian connection. I submit even then, under the statute, they could not continue to put Paris in their market if it's not a truthful statement. Why? Because consumers are going to think the goods are coming from there or they have some element of what makes Paris special about the goods, and here it's the design, the fashion design capital that Paris is. You either have to show that they're designed there, they're sold there, they're manufactured there. People care. It's the cachet that they're buying. Why do you need Paris in the mark otherwise? It's not, you know, J.P.K. Albuquerque, maybe the office couldn't put forth evidence that shows that Albuquerque is known for handbags so it wouldn't be material, but here it is. You're actually not quite making the argument I'd expect. I'd expect you would say that we don't want to give any single designer the right to withdraw from the public domain, the use of one particular label which they all need to use. They all wish to associate their goods with Paris or Milan, and I've already forgotten the other two. London and New York. Okay, thanks. But they all, and you don't want to give any single designer the right to withdraw that important description from the marketplace. That's 100% the policy argument and the reason why 2E3 exists. That's exactly right. We are making that argument. And so that might suggest that even if we moved a designer to Paris, they don't get to still use Paris because every other designer ought to have the right to associate their goods with one of the four capitals, too. Right? That's correct. And then we're in a little bit of a different situation, though. At least it's truthful in that context. And so they're out of being deceptive, which is an absolute bar to registration, to being descriptive, and then they could disclaim the geographic component of the mark and perhaps get on the register. But that's not what we have here. We have someone who's nowhere connected in any way the goods with Paris, trying to intimate that the goods come from there, and the record shows that consumers would care if they do. The difficulty, the slight difficulty I have with that is that I'm still troubled whether you've got the right product. The product, I think, here is the design, not the handbag. But there's no evidence in the record that that's the product, Your Honor. The product... We've got to go by what's in the application. Well, but... The product is the handbag. This isn't a case where it's fashion design... No, no, what is the product? What's actually the product? It's handbags and various other fashion... Wait, what are they? They are... Let's see here. It isn't just handbags. Sunglasses. It's a group of products... It's sunglasses. ...including sunglasses. Sunglasses and handbags are linked only by what in this case? The design. The thing that is the product is the design. You know, glasses and handbags are polar ends of the manufacturing world. One's plastic and the other's leather. They're linked by a design. So design is the product you're looking at. I have to disagree with that. Design is maybe a component of the product, but you're always looking at the product. But it's the key component here, isn't it? Because it's what links the glasses to the handbags. I'm not sure... Glasses and handbags, what else links them? The fact that they're making both of them and they've come in for both of them? Yeah, they're making both of them. And what is it about the products that allows them to be listed as a single product in your goods designation? Well, I mean, they're accessories. They're fashion articles. I guess I'm not... With a design. Everything has a design, though, Your Honor. It's not about the designer. It's about the goods. Trademarks, as Your Honor pointed out earlier, it's about source identification. It's about the goods. Sure, people have trademarks for things that have very unique designs, but we're not looking about design. Copyright protects designs. Design patents protect designs. We're looking at trademarks. The designing service could be protected. So if a designer wanted to register a mark or a logo or an emblem or anything else, they could register it as a service mark for the design services. Yes. So Chanel or Pierre Cardin or any number of other designers could register that mark as a design mark that would protect the design on any kind of product. And you're making a very good distinction between goods and services because in the services context, if it is for design consultation services or for design services, of course you may care more who the designer is in that context because that's the service provider. But here, the statute is telling you all you care about is the goods. And again, we're not talking about this in the abstract. We're talking about does the mark here with Paris in it, what does that tell people? Well, JPK might indicate that there's a person behind the goods. But Paris tells them where it comes from. And that's all that we care about under the statute. So if the court has no further questions... Okay. No more designer names we want to throw out here. But he got Pierre Cardin. I was pretty impressed with that. We're pretty good. We're a guy from Brooklyn. Yeah, we know who the least skilled person is on this panel. Thank you, Your Honor. One thing that needs to be kept in mind is that the word deception is a very strong word, just as the word fraud was a very strong word in the Bose case. And this court dialed back what the definition... But it's hard for you to say this isn't misdescriptive, right? There's the closest association that you can come up with is that somebody who is involved with these products lived there 30 years ago. That's pretty attenuated, isn't it? It's not so attenuated when you figure that the person who lived there lived there during his formative years. And when you live at a place for a good portion of your youth to age, I believe it was 31, it's likely that you're going to take away the culture, the sense, the style of that place. And that is what the consumer is receiving when they purchase something that has the brand. I feel sorry for Portland, Oregon. It's responsible for me. But I don't think Portland, Oregon... I have any entitlement to associate myself with that after 40 years. One of the differences, and this might be a slight difference, and that is that fashion is so tied in to Paris, and so tied in to design, that when you... But that's what makes it misdescriptive. You are trying to capitalize on the Paris association when you don't have a Paris association. That's what the consumer will detect as the misdescription. Deceptive misdescription because you're trying to capitalize on the Paris name when you're not Parisian. Your goods are Parisian. Maybe the goods may not be manufactured in Paris, but getting back to the design, they originate in the mind of somebody that spent his formative years in Paris. Once a Parisian, always a Parisian. If the court has any other questions, I would be happy to respond otherwise. Thank you. Thank you, Mr. Siffnick. The next case is Gruen versus Shinseki.